UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| JACQUELINE DE BRITTO BUCCO, ANTONIO DIEGO BARBOSA COUTINHO, ANA PAULA OLIVEIRA DE SOUZA COSTA, CARILYNS SARAI CAMUS JORQUERA JORQUERA, VINICIUS ASSAD DE MAGALHAES, BRIAN DE SOUZA MELO, MARCOS VINICIUS MORAIS PINTO, SILMAR DA SILVA REIS, CESAR PRIESTER ROSA, JR., NESTOR ALONSO ACEVEDO CONTRERAS, and LEILA SILVA FREIRE SOARES, <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN IOWA TECH COMMUNITY COLLEGE, PREMIER SERVICES, INC. d/b/a J&L STAFFING AND RECRUITING, INC. and also d/b/a J&L ENTERPRISES, INC., ROYAL CANIN USA, INC., TUR-PAK FOODS, INC., JULINE ALBERT, NANCY ALBRECHT, ROSANA SALGADO BURRIGHT, TERRY MURRELL, TERRY YI, JAMES ZUERCHER, and LILLY CASTRO, <br><br> Defendants. | **CASE NO.** 5:21-cv-4001 <br><br><br> **COMPLAINT and JURY DEMAND** |

COME NOW Plaintiffs Jacqueline de Britto Bucco, Antonio Diego Barbosa Coutinho,

Ana Paula Oliveira de Souza Costa, Carilyns Sarai Camus Jorquera Jorquera, Vinicius Assad de

Magalhaes, Brian de Souza Melo, Marcos Vinicius Morais Pinto, Silmar Da Silva Reis, Cesar

Priester Rosa, Jr., Nestor Alonso Acevedo Contreras, and Leila Silva Freire Soares, and for their

Complaint against Defendants Western Iowa Tech Community College, Premier Services, Inc.

d/b/a J&L Staffing and Recruiting, Inc. and also d/b/a J&L Enterprises, Inc., Royal Canin USA,

1

Inc., Tur-Pak Foods, Inc., Juline Albert, Nancy Albrecht, Rosana Salgado Burright, Terry Murrell, Terry Yi, James Zuercher, and Lilly Castro state as follows:

## NATURE OF THE CASE

1.     This action is brought pursuant to the provisions of The Trafficking Victims Protection Act,  18 U.S.C. §§ 1581, 1589, 1590, and 1595, The Fair Labor Standards Act, 29 U.S.C. § 201, The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, as well as violations of state law including violations of the Iowa Wage Payment Collections Act, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, breach of contract, tortious bad faith breach of contract or denial of contract, and tortious infliction of emotional distress.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under federal law.

3.     Venue in the Northern District Court in Iowa is proper under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in Woodbury County, Iowa.

## PARTIES

4.     At all times material hereto, Plaintiff Jacqueline de Britto Bucco ("Bucco") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

5.     At all times material hereto, Plaintiff Antonio Diego Barbosa Coutinho ("Coutinho") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

2

6.      At all times material hereto, Plaintiff Ana Paula Oliveira de Souza Costa ("Costa") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

7.      At all times material hereto, Plaintiff Carilyns Sarai Camus Jorquera ("Jorquera") was a citizen of Chile, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

8.      At all times material hereto, Plaintiff Vinicius Assad de Magalhaes ("Magalhaes") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

9.      At all times material hereto, Plaintiff Brian de Souza Melo ("Melo") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

10.      At all times material hereto, Plaintiff Marcos Vinicius Morais Pinto ("Pinto") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

11.      At all times material hereto, Plaintiff Silmar Da Silva Reis ("Reis") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

12.      At all times material hereto, Plaintiff Cesar Priester Rosa, Jr. ("Rosa") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

13.      At all times material hereto, Plaintiff Nestor Alonso Acevedo Contreras ("Contreras") was a citizen of Chile, a resident of Woodbury County, Iowa, and a participant in

3

the J-1 Visa Program at WITCC.

14.     At all times material hereto, Plaintiff Leila Silva Freire Soares ("Soares") was a citizen of Brazil, a resident of Woodbury County, Iowa, and a participant in the J-1 Visa Program at WITCC.

15.     At all times material hereto, Defendant Western Iowa Tech Community College ("WITCC"), was a public community college organized and existing under the laws of the State of Iowa, with its principal place of business in Sioux City, Iowa.

16.     At all times material hereto, Premier Services, Inc. d/b/a J&L Staffing and Recruiting, Inc. and also d/b/a J&L Enterprises, Inc. (collectively, "J&L Staffing"), was an Iowa corporation, with its principal place of business in Sioux City, Iowa.

17.     At all times material hereto, Defendant Royal Canin USA, Inc. ("Royal Canin") was a Virginia corporation, with its principal place of business in St. Charles, Missouri, and a plant location in North Sioux City, South Dakota where it manufactures high-end pet food.

18.     At all times material hereto, Defendant Tur-Pak Foods, Inc. ("Tur-Pak") was an Iowa corporation, with its principal place of business in Sioux City, Iowa where it packs and assembles food products.

19.     At all times material hereto, Defendant Juline Albert was a United States citizen, a resident of Sioux City, Iowa, and an employee and Vice-President of WITCC.

20.     At all times material hereto, Defendant Nancy Albrecht was a United States citizen, a resident of Sioux City, Iowa, and an employee of J&L Staffing.

21.     At all times material hereto, Defendant Rosana Salgado Burright was a United States citizen, a resident of Sioux City, Iowa, an employee of WITCC, and worked as an International Education Specialist and Recruiter.

4

22.     At all times material hereto, Defendant Terry Murrell was a United States citizen, a resident of Sioux City, Iowa, and an employee and President of WITCC.

23.      At all times material hereto, Defendant Terry Yi was a United States citizen, a resident of Sioux City, Iowa, and an employee of WITCC.

24.     At all times material hereto, Defendant James Zuercher was a United States citizen, a resident of Sioux City, Iowa, and an employee of WITCC.

25.     At all times material hereto, Defendant Lilly Castro was a United States citizen, a resident of Sioux City, Iowa, and an employee of WITCC.

## FACTUAL BACKGROUND – ALL PLAINTIFFS

26.     Plaintiffs were all participants in the Federal J-1 Visa Program at WITCC.

27.     Defendants represented to Plaintiffs that the Federal J-1 Visa Program at WITCC was a two-year program in which Plaintiffs would study at WITCC and complete internships related to their field of study and at which they would work no more than 32 hours per week.

28.     After Plaintiffs arrived in the United States, they were assigned jobs at Defendants Royal Canin and/or Tur-Pak.

29.     The jobs to which Plaintiffs were assigned had no educational value and were completely unrelated to their intended fields of study.

30.     Plaintiffs were expected to work more than the 32 hours a week they had been told they would be working.

31.     Defendants told Plaintiffs that if they were unable to work due to illness, they would be removed from the J-1 Visa Program and sent home to their native country.

32.     Defendants Royal Canin and Tur-Pak paid $15 per hour for the labor Plaintiffs provided, yet Plaintiffs, themselves, received only $7.25 per hour. The rest of their earnings were

5

given to WITCC and J&L Staffing.

33.     Plaintiffs were enrolled in classes at WITCC but kept segregated from the general student population and took classes only with other Brazilians and Chileans who were part of the J-1 Visa Program.

34.     In November 2019, an anonymous complaint was made which resulted in the U.S. State Department investigating the J-1 Visa Program at WITCC.

35.     On November 19, 2019, the State Department interviewed several of the students participating in the J-1 Visa Program.

36.     After the State Department completed their interviews, Plaintiffs lost their jobs at Royal Canin and Tur-Pak.

37.     Because they were no longer working, Plaintiffs did not have money to buy food. WITCC told the students to utilize local food pantries.

38.     Defendant WITCC ended the J-1 Visa Program in January 2020 and asked the students to vacate student housing in February and March of 2020.

## FACTUAL BACKGROUND – JACQUELINE DE BRITTO BUCCO

39.     Plaintiff Bucco learned about the J-1 Visa Program at WITCC through a friend in Brazil who knew Defendant Rosana Salgado Burright ("Burright").

40.     Plaintiff Bucco applied and was accepted into the program.

41.     Defendant Burright told Plaintiff Bucco that she would receive free housing and food as well as scholarships to cover her tuition.

42.     When Plaintiff Bucco first arrived in the U.S., WITCC was providing the J-1 Visa students with $50 Wal-Mart gift cards for groceries.

43.     After the J-1 Visa students started working, WITCC stopped giving the students

6

gift cards. Students who were struggling to buy food were told by Defendant Burright to go to the local food pantry.

44.     Plaintiff Bucco's intended field of study at WITCC was Culinary Arts.

45.     Plaintiff was told by Defendant Burright she would be studying at WITCC and working 32 hours per week at Defendant Tur-Pak.

46.     Plaintiff Bucco worked at Tur-Pak. She was paid $7.25 per hour and worked more than 32 hours per week.

47.     Plaintiff Bucco changed her field of study to Robotics and Automation and then worked at Defendant Royal Canin.

48.     Plaintiff Bucco's job was to package pet food. She was paid $7.25 per hour for her work at Royal Canin.

49.     In January 2020, Plaintiff Bucco was told by Defendant Albert (with Defendants Burright and Murrell present) she could no longer work at Royal Canin due to the anonymous complaint that was made to the State Department.

50.     Defendant WITCC then hired Plaintiff Bucco for a job doing administrative work.

51.     Plaintiff Bucco was paid $7.25 per hour by Defendant WITCC to perform administrative and office related job duties.

52.     Plaintiff Bucco worked doing administrative work for WITCC until it ended the J-1 Visa Program.

### FACTUAL BACKGROUND – ANTONIO DIEGO BARBOSA COUTINHO

53.     Plaintiff Coutinho learned about Defendant WITCC's J-1 Visa Program from a friend who knew Defendant Burright.

54.     Plaintiff Coutinho reached out to Defendant Burright, who sent him information

7

about the program. Plaintiff Coutinho applied and was accepted to the program.

55.     Plaintiff Coutinho's intended field of study at WITCC was Robotics and Automation.

56.     Plaintiff Coutinho was told he would be studying at WITCC and working 36 hours per week at Defendant Royal Canin as a robotics and automation technician. He was also told he would not pay any fees to WITCC and his housing and food would be provided.

57.     Plaintiff Coutinho's job at Royal Canin was unrelated to the field of Robotics and Automation.

58.     Plaintiff Coutinho worked carrying 50 lb. bags of rice and meat to a mixer that was used to make pet food.

59.     Plaintiff Coutinho worked more than 36 hours a week, often working up to 52 hours per week.

60.     Plaintiff Coutinho was paid $7.25 per hour for his work at Royal Canin. His American co-workers told him they were earning approximately $18 - $18.25 per hour for the same work.

61.     In March 2020, Plaintiff Coutinho moved out of the student housing at WITCC because Defendant WITCC had ended the J-1 Visa Program.

### FACTUAL BACKGROUND - ANA PAULA OLIVEIRA DE SOUZA COSTA

62.     Plaintiff Costa learned about the J-1 Visa Program via a Facebook post.

63.     Plaintiff Costa's intended field of study was Culinary Arts and Food Services.

64.     Prior to arriving in the U.S., Plaintiff Costa was told she would be working a maximum of 35 hours per week in a job which was related to food service.

65.     Plaintiff Costa was told that the job she would be placed in could be in a factory,

but it would be related to her field of study and would give her valuable professional experience.

66.     Plaintiff Costa was not placed in a job related to food service, but instead worked at Defendant Royal Canin, a pet food company.

67.     Royal Canin paid $15 per hour for Plaintiff Costa's work, but she only received $7.25 per hour for the hours she worked.

68.     In March 2020, Plaintiff Costa moved out of the student housing at WITCC because Defendant WITCC had ended the J-1 Visa Program.

**FACTUAL BACKGROUND – CARILYNS SARAI CAMUS JORQUERA**

69.     Plaintiff Jorquera learned about Defendant WITCC's J-1 Visa Program via a post on Facebook. After seeing the post, Plaintiff Jorquera reached out to Carlos Espinoza and Defendant Burright who helped Plaintiff Jorquera through the application process.

70.     Plaintiff Jorquera applied and was accepted into the J-1 Visa Program.

71.     Plaintiff Jorquera was recruited for the Culinary Arts program.

72.     Plaintiff Jorquera had no interest in studying Culinary Arts or Robotics and Automation but was told she could change her field of study once she arrived at WITCC.

73.     Plaintiff Jorquera was unable to be placed at Defendant Royal Canin or Defendant Tur-Pak because there was a delay with her social security card.

74.     Defendant WITCC gave Plaintiff Jorquera jobs on campus which included translating in the Robotics classes for other Chilean students and working in the mailroom.

75.     Plaintiff Jorquera was paid $7.25 per hour for her jobs at WITCC.

76.     Plaintiff Jorquera discovered WITCC was deducting money from her paycheck.

77.     Plaintiff Jorquera asked WITCC employees why money was being deducted from her paycheck because it was her understanding she did not have to pay any fees for her tuition or

9

housing at WITCC.

78.     Plaintiff Jorquera discovered WITCC was receiving $10 per hour for the work she was doing on campus. She was told that money was to pay fees for the program.

79.     In November 2019, Plaintiff Jorquera became ill and was unable to work. She lost her jobs on campus because she had missed some work.

80.     After three weeks of unemployment, Defendant WITCC gave Plaintiff Jorquera a job as a security officer on campus.

81.     Plaintiff Jorquera asked Defendant Albert if she could get a job at Wal-Mart to help cover costs from being unemployed and medical bills from when she was sick.

82.     Defendant Albert told Plaintiff Jorquera she could find a job off campus. Plaintiff Jorquera found a job at Wal-Mart.

83.     When Defendant Burright discovered Plaintiff Jorquera had found a job off campus, she told Plaintiff Jorquera she would need to give portions of her paycheck from Wal-Mart to WITCC to cover costs.

84.     When WITCC ended the J-1 Visa Program in March 2020, Plaintiff Jorquera moved out of the student housing and returned to Chile.

**FACTUAL BACKGROUND - VINICIUS ASSAD DE MAGALHAES**

85.     Plaintiff Magalhaes learned about the J-1 Visa Program via a Facebook page. He contacted Defendant Burright who assisted him in applying for the program.

86.     Plaintiff Magalhaes's intended field of study was Robotics and Automation.

87.     Plaintiff Magalhaes was told he would be working at Royal Cain, and his job would be related to robotics or machine maintenance.

88.     Plaintiff Magalhaes worked at Royal Canin as an Operator.  This position was

unrelated to robotics and automation. He earned $7.25 per hour.

89.     There were weeks Plaintiff Magalhaes worked over 54 hours per week even though he understood the maximum number of work hours was 40 hours per week.

90.     In November 2019, Plaintiff Magalhaes was told he could no longer work at Royal Canin due to the anonymous complaint that was made to the State Department.

91.     After Plaintiff Magalhaes's employment at Royal Canin ended, he resorted to using local food pantries and church donations for food.

92.     In December 2019, Plaintiff Magalhaes found a job at Firehouse Subs. When Defendant WITCC found out he was working outside of the program he was told he had to quit.

93.     Plaintiff Magalhaes left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

## FACTUAL BACKGROUND - BRIAN DE SOUZA MELO

94.     Plaintiff Melo learned about the J-1 Visa program via a Facebook post from Defendant Burright. Plaintiff Melo's grandmother knew Defendant Burright from church, so he trusted the program was legitimate.

95.     Defendant Burright's Facebook post represented the J-1 Visa Program as a 2-year program in which students could study and work in an internship related to their field of study.

96.     Plaintiff Melo's intended field of study was Robotics and Automation.

97.     Plaintiff Melo was told he would be studying and working in a job related to Robotics and Automation. He was told he would be working 35 hours per week.

98.     Initially, Plaintiff Melo worked at Defendant Tur-Pak because there were no positions available at Defendant Royal Canin.

99.     Plaintiff Melo was paid $7.25 for his work at Tur-Pak. In addition to taxes,

11

Defendant Tur-Pak deducted transportation costs for the van they provided to the J-1 Visa Students.

100. Plaintiff Melo's work was completely unrelated to robotics and automation.

101. After some time working at Tur-Pak, Plaintiff Melo was offered a position at Royal Canin because another J-1 Visa student had been fired for missing work due to illness.

102. Plaintiff Melo was paid $7.25 per hour for his work at Royal Canin.

103. In November 2019, Plaintiff Melo was told he could no longer work at Royal Canin due to the State Department's investigation.

104. Plaintiff Melo looked for other jobs outside of the J-1 Visa Program because he needed money to support himself.

105. Plaintiff Melo found a job at Hy-Vee but was told by Defendant Albert that he could not work outside of the WITCC J-1 Visa Program.

106. In February 2020, Defendant WITCC offered Plaintiff Melo a position as a Social Justice intern.

107. In March 2020, Defendant WITCC told Plaintiff Melo and the other J-1 Students that they were ending the program and the students would be sent home.

108. Plaintiff Melo left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

**FACTUAL BACKGROUND - MARCOS VINICIUS MORAIS PINTO**

109. Plaintiff Pinto's intended field of study was Robotics and Automation. He was told he would be studying and working in his field of study.

110. Plaintiff Pinto was placed at Royal Canin for work. He was very disappointed when he learned his job had nothing to do with robotics or automation.

12

111.     Plaintiff Pinto's job at Royal Canin involved carrying large 50 lb. bags of chemicals and dosing the pet food with the chemicals.

112.     Plaintiff Pinto's work schedule was unpredictable. He would work anywhere from 36-56 hours per week. He would often work 12 days in a row and would work double shifts on weekends.

113.     Plaintiff Pinto was paid $7.25 per hour for his work at Royal Canin.

114.     Plaintiff Pinto was aware Royal Canin was paying $15 per hour for his labor, and WITCC and J&L Staffing were taking a percentage of his wages.

115.     Plaintiff Pinto left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

**FACTUAL BACKGROUND - SILMAR DA SILVA REIS**

116.     Plaintiff Reis learned of the J-1 Visa Program via a Facebook post from Defendant Burright.

117.     Plaintiff Reis's intended field of study was Robotics and Automation.

118.     When Plaintiff Reis inquired about the program, Defendant Burright told him it was a two-year program which would allow Plaintiff Reis to study Robotics and Automation and work in the field of robotics.

119.     Plaintiff Reis was told he would be working around 30 hours per week at Royal Canin as a robotics technician.  Plaintiff Reis was familiar with Royal Canin and was hopeful this experience could eventually lead to a job in Brazil.

120.     Plaintiff Reis's job at Royal Canin was not related to the field of robotics. Rather than working with robotics, Plaintiff Reis worked with high risk ingredients. He handled 50 lb. bags of chemical ingredients and mixed them in the pet food.

13

121.    Rather than the 30 hours per week, Plaintiff Reis was working 50-60 hours per week at Royal Canin.

122.    Plaintiff Reis was paid $7.25 per hour for his work at Royal Canin.

123.    Plaintiff Reis left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

## FACTUAL BACKGROUND – CESAR PRIESTER ROSA, JR.

124.    Plaintiff Rosa learned about the J-1 Visa program through a friend and a Facebook post by Defendant Burright.

125.    The Facebook post described the program as a 2-year program in which students could study and work in a field related to their studies. The post said fees and housing would be paid for.

126.    Plaintiff Rosa's intended field of study was Robotics.

127.    Plaintiff Rosa was told he would be working at Defendant Royal Canin.

128.    Plaintiff Rosa thought he would be working in a position related to robotics and automation, but his jobs were unrelated to his field of study.

129.    Plaintiff Rosa worked in the cooler moving 50 lb. blocks of frozen meat which would be used for making pet food.

130.    Plaintiff Rosa also worked in the mixing room processing pet food and in packaging.

131.    Plaintiff Rosa was paid $7.25 per hour.

132.    Despite being told he would be working 32 hours per week, Plaintiff Rosa worked between 36 – 54 hours per week.

133.    After the anonymous complaint to the State Department, Plaintiff Rosa was told

14

he could no longer work at Royal Canin.

134.    Plaintiff Rosa could not afford food without the income he was receiving from Defendant Royal Canin. He was told to use local food pantries.

135.    Plaintiff Rosa left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

### FACTUAL BACKGROUND - NESTOR ALONSO ACEVEDO CONTRERAS

136.    Plaintiff Acevedo learned about the J-1 Visa Program at WITCC via a Facebook post and a contact in Chili.

137.    Plaintiff Acevedo's intended field of study was Culinary Arts.

138.    Plaintiff Acevedo thought he would be working in a job related to Culinary Arts.

139.    Plaintiff Acevedo was told by Defendants that he would receive free housing and food.  In the beginning, Plaintiff Acevedo was given Walmart gift cards to purchase food, but once he started working, he no longer received the cards.

140.    Plaintiff worked at Defendant Tur-Pak packaging food. Plaintiff had to unload boxes of meats and put them in the refrigerator and manage the delivery of them to the production lines.

141.    Plaintiff received only $7.25 per hour for his work at Tur-Pak.

142.    Plaintiff Acevedo asked by Defendants took money he earned from his paychecks.  They told him it was because he had to reimburse them for his plane ticket to Iowa and he and to cover rent.

143.    Plaintiff worked five to six days a week.

144.    Defendants threatened Plaintiff that if he did not work, he would be removed from the program. At one point, he broke a tooth while working but did not go to the dentist out of

fear of missing work and being deported.

145.    Plaintiff Acevedo left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

### FACTUAL BACKGROUND - LEILA SILVA FREIRE SOARES

146.    Plaintiff Soares learned about the J-1 Visa Program at WITCC via a Facebook post from Defendant Burright.

147.    Plaintiff Soares's intended field of study was Culinary Arts.

148.    Plaintiff Soares thought she would be working in a job related to Culinary Arts.

149.    Plaintiff worked at Defendant Tur-Pak packaging food. The work environment at Tur-Pak was very cold, and Plaintiff was not given proper attire to wear while working in the freezer.

150.    Plaintiff worked 12 hour shifts six days a week.

151.    Plaintiff was paid $7.25 per hour for her work at Tur-Pak. Defendant Tur-Pak deducted $40 per week from her paycheck for transportation costs.

152.    Plaintiff Soares left WITCC housing in March 2020 after WITCC ended the J-1 Visa Program.

### COUNT I: FORCED LABOR AND TRAFFICKING FOR FORCED LABOR, TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, VIOLATIONS OF 18 U.S.C. §§ 1581, 1589, 1590, and 1595 – ALL DEFENDANTS

153.    By recruiting Plaintiffs for WITCC's J-1 Visa Program, Defendants recruited, transported, provided, or obtained Plaintiffs for labor or services.

154.    Defendants knowingly benefited, either financially or by receiving things of value, specifically as follows:

    a.   Defendants Tur-Pak and Royal Canin were compensated with guaranteed

16

workers who could not quit or even take a sick day without fear of retaliation.

b. The WITCC Defendants received a kickback for each hour of labor performed by Plaintiffs.

c. Defendant J&L Staffing benefited by obtaining employees who could not quit or even take a sick day for fear of legal repercussions (e.g., deportation) and serious physical harm (withholding food and housing).

155. Defendants told Plaintiffs the J-1 Visa Program was an educational cultural exchange program, and that they would study and work in an internship related to their field of study.

156. Defendants knowingly placed Plaintiffs in unskilled labor positions, which are not permitted under the J-1 Visa Program requirements, rather than placing them in internships related to their fields of study.

157. Defendants Royal Canin and Tur-Pak paid Defendants WITCC and J&L Staffing for the Plaintiffs' labor.

158. Defendants knowingly obtained the labor and services of Plaintiffs by means of the abuse or threatened abuse of the law or legal process.

159. Defendants expected Plaintiffs to work excruciating hours, to work while sick, and threatened Plaintiffs with deportation if Plaintiffs were unable to work.

WHEREFORE, Plaintiffs respectfully request the following relief:

a. That all Defendants be prohibited and enjoined from any further participation in the J-1 Visa Program in perpetuity;

b. Judgment against all Defendants, joint and severally;

c. That Plaintiffs be awarded compensatory and consequential damages;

d.  That Plaintiffs be made whole by providing them with the educational opportunities promised to them, compensation for the past and future mental and emotional harm and anguish, moneys paid during the recruitment process and expenses incurred to travel to and from the United States, repayment of deductions withheld from Plaintiffs' paychecks, and other affirmative relief;

e.  That Plaintiffs be awarded reasonable attorney fees and costs incurred in prosecuting this action; and

f.  That Plaintiffs be awarded such additional and further relief as is just and appropriate.

**COUNT II:  VIOLATIONS OF 29 U.S.C. § 201, FAIR LABOR STANDARDS ACT, UNPAID OVERTIME WAGES – DEFENDANTS ROYAL CANIN AND TUR-PAK**

160.  At all times relevant to this complaint, Plaintiffs were employed by Defendants Royal Canin and Tur-Pak.

161.  At all times relevant to this complaint, Defendants Royal Canin and Tur-Pak were subject to the requirements of the Fair Labor Standards Act.

162.  Defendants Royal Canin and Tur-Pak failed to pay Plaintiffs all wages due and failed to pay Plaintiffs time and a half for hours exceeding 40 per week.

WHEREFORE, Plaintiffs demand judgment against Defendants Royal Canin and Tur-Pak for unpaid wages, liquidated damages, prejudment and postjudgment interest, court costs, and attorney fees.

**COUNT III: VIOLATIONS OF IOWA WAGE PAYMENT COLLECTIONS LAW – DEFENDANTS ROYAL CANIN AND TUR-PAK**

163.  Plaintiffs were employees within the meaning of Iowa Code Chapter 91A.

164.  Defendant Royal Canin was an employer within the meaning of Iowa Code

18

Chapter 91A.

165. Defendant Tur-Pak was an employer within the meaning of Iowa Code Chapter 91A.

166. Defendants unlawfully withheld deductions from Plaintiffs' paychecks and diverted them to Defendants J&L Staffing and WITCC.

167. Defendants Royal Canin and Tur-Pak failed to pay Plaintiff all wages due, including but not limited to, time and a half for hours exceeding 40 per week.

WHEREFORE, Plaintiffs demand judgment against Defendants Royal Canin and Tur-Pak for unpaid wages, liquidated damages, prejudgment and postjudgment interest, court costs, attorney fees, and such other relief as is just and appropriate.

## COUNT IV: VIOLATIONS OF 18 U.S.C. § 1962 – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT– ALL DEFENDANTS

168. At all times material to this complaint, Defendants WITCC, Royal Canin, Tur-Pak, and J&L Staffing were engaged in an ongoing business relationship.

169. Defendants WITCC and J&L Staffing sent representatives to Chile and Brazil to recruit students for the J-1 Visa Program, which they represented as a cultural exchange program.

170. Defendants WITCC and J&L Staffing told Plaintiffs they would be studying at WITCC and would be provided an internship in their field of study.

171. Defendants WITCC and J&L Staffing then placed Plaintiffs in unskilled labor positions at Royal Canin and Tur-Pak.

172. Plaintiffs were paid significantly less than American employees in the same positions and had unlawful deductions withheld from their paychecks.

173. The Defendants' ongoing business relationship meets the requirements for a

19

RICO enterprise within the meaning of 18 U.S.C. § 1961(4).

174.     Forced labor and trafficking for forced labor constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B). Forced labor and trafficking for forced labor satisfies the requirements for a RICO predicate act and for a nexus with interstate commerce.

175.     Defendants' multiple fraudulent misrepresentations as detailed above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

176.     Defendants have conducted and have conspired to conduct the affairs of the RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

177.     As a direct result of Defendants' actions, Plaintiffs have sustained injuries and damages.

WHEREFORE, Plaintiffs respectfully request for the following relief:

a.   That all Defendants be prohibited and enjoined from any further participation in the J-1 Visa Program in perpetuity;

b.   Judgment against all Defendants, jointly and severally;

c.   That Plaintiffs be awarded compensatory damages;

d.   That Plaintiffs be made whole by providing them with reimbursement for moneys paid during the recruitment process and expenses incurred to travel to and from the United States, repayment of deductions withheld from Plaintiffs' paychecks, and other affirmative relief;

e.   That Plaintiffs be awarded reasonable attorneys fees and costs incurred in prosecuting this action; and

f.   That Plaintiffs be awarded such additional and further relief as is just and appropriate.

20

**COUNT V: CONSPIRACY TO COMMIT VIOLATIONS OF 18 U.S.C. § 1962 - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT– ALL DEFENDANTS**

178.   Defendants WITCC, J&L Staffing, Royal Canin, and Tur-Pak agreed to accomplish an unlawful plan to engage in a pattern of racketeering activity.

179.   Defendants WITCC, J&L Staffing, Royal Canin, and Tur-Pak agreed to the overall objective of the conspiracy or agreed with at least one other Defendant to commit two predicate acts as part of the conspiracy.

180.   Defendants WITCC, J&L Staffing, Royal Canin, and Tur-Pak agreed to the overall objective of recruiting Plaintiffs for unskilled labor positions under the guise of having the Plaintiffs participate in Defendant WITCC's J-1 Visa Program.

181.   Defendants WITCC, J&L Staffing, Royal Canin, and Tur-Pak agreed to the following predicate acts as part of the conspiracy:

    a.   Defendants WITCC and J&L Staffing recruited Plaintiffs to participate in Defendant WITCC's J-1 Visa Program by intentionally making false statements.

    b.   J&L Staffing then placed the recruited Plaintiffs at Defendants Royal Canin and Tur-Pak in unskilled labor positions, which were jobs specifically excluded from participating in the federal J-1 Visa Program and in which Plaintiffs were specifically forbidden from participating.

    c.   Defendants Royal Canin and Tur-Pak made fraudulent unlawful deductions from the Plaintiffs' paychecks and gave portions of those deductions to Defendants WITCC and J&L Staffing.

182.   As a direct result of Defendants' actions, Plaintiffs have sustained injuries and

damages.

WHEREFORE, Plaintiffs respectfully request the following relief:

    a. That all Defendants be prohibited and enjoined from any further participation in the J-1 Visa Program in perpetuity;

    b. Judgment against all Defendants, jointly and severally;

    c. That Plaintiffs be awarded compensatory damages;

    d. That Plaintiffs be made whole by providing them with compensation, moneys paid during the recruitment process and expenses incurred to travel to and from the United States, repayment of deductions withheld from Plaintiffs' paychecks, and other affirmative relief;

    e. That Plaintiffs be awarded treble damages pursuant to 18 U.S.C. § 1964(c);

    f. That Plaintiffs be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

    g. That Plaintiffs be awarded such additional and further relief as is just and appropriate.

## COUNT VI – VIOLATION OF THE 13TH AMENDMENT – ALL DEFENDANTS

183. Defendants collectively required Plaintiffs to work under conditions that constituted involuntary servitude.

184. Defendants exerted extreme psychological pressure on Plaintiffs to coerce them to work, including:

    a. Threatening to revoke their J-1 Visas and deport them if they missed work.

    b. Threatening them with large amounts of debt owed if they missed work.

    c. Threatening to withhold food or housing if they failed to work.

22

d.  Charging Plaintiffs at least $250.00 per week if they were not working at a job where Defendants were getting financial benefits from Plaintiffs' work.

e.  Dictating when and where Plaintiffs could work, and under what conditions, in their free time.

185.    Defendants isolated Plaintiffs and controlled their movements, specifically including:

a.  Requiring Plaintiffs to live in Defendant WITCC housing.

b.  Restricting Plaintiffs' access to vehicles to leave or their ability to obtain financial ability to purchase plane tickets to return home.

c.  Contractually obligating Plaintiffs to keep Defendant WITCC aware of their location at all times.

186.    Defendants took advantage of the natural isolation that occurred because Plaintiffs were immigrants with limited English abilities.

187.    As a result of these conditions, Plaintiffs had no real choice but to work for the Defendants, until the program was shut down.

188.    Once Plaintiffs were brought to the United States and indebted to Defendants, they had no real choice but to do the work demanded of them.

189.    Defendants, through their agents, servants, and employees in their official capacities, established a policy, regulation, official decision, custom, or usage of reckless, or deliberate indifference to the rights of Plaintiffs.

190.    Defendants have established, maintained, and enforced policies, regulations, official decisions, or usages which unconstitutionally deprived Plaintiffs of their rights against involuntary servitude as guaranteed by the Thirteenth Amendment to the United States

Constitution.

191.     Defendants deprived Plaintiffs of the rights guaranteed to them under the Thirteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs respectfully request the following relief:

a.   That all Defendants be prohibited and enjoined from any further participation in the J-1 Visa Program in perpetuity;

b.   Judgment against all Defendants, jointly and severally;

c.   That Plaintiffs be awarded compensatory and consequential damages;

d.   That Plaintiffs be awarded punitive damages, as allowed by law;

e.   That Plaintiffs be made whole by providing them with compensation, moneys paid during the recruitment process and expenses incurred to travel to and from the United States, repayment of deductions withheld from Plaintiffs' paychecks, and other affirmative relief;

f.   That Plaintiffs be awarded reasonable attorneys fees and costs incurred in prosecuting this action; and

g.   That Plaintiffs be awarded such additional and further relief as is just and appropriate.

**COUNT VII: DENIAL OF RIGHT TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS UNDER IOWA STATE CONSTITUTION ARTICLE I, § 9 – ALL DEFENDANTS**

192.     The Iowa Constitution guarantees that no person shall be deprived of life, liberty or property without due process of law.

193.     The Iowa Constitution strictly prohibits slavery or involuntary servitude, unless for the punishment of crime.

24

194.    Defendants, through their agents, servants and employees in their official capacities, deprived Plaintiffs of procedural and substantive due process, through policy, practice and/or custom, when recklessly and/or intentionally subjecting them to human and labor trafficking, coercing them to work for Defendants' benefit, isolating and controlling their movements and sources of financial independence, and threatening them with deportation or other punishment as fully detailed above.

195.    Defendants deprived Plaintiffs of their rights without notice and opportunity to be heard.

196.    Defendants' conduct shocks the conscience.

197.    As a result of Defendants' reckless and/or intentional conduct, Plaintiffs suffered and will continue to economic injury, past and future pain and suffering, and other damages in an amount to be determined by the finder of fact.

198.    Defendants' reckless and/or intentional conduct caused Plaintiffs' damages.

199.    Defendants' actions perpetrated against Plaintiffs were done in reckless disregard for the rights of Plaintiffs, entitling them to punitive damages pursuant to Iowa Code Section 668A.1. Punitive damages are necessary to vindicate Plaintiffs' infringed rights of privacy and/or dignity. *Godfrey v. State*, 898 N.W.2d 844, 881 (Iowa 2017) (Cady, J., dissenting in part, concurring in part).

WHEREFORE, Plaintiffs respectfully request the following relief:

  a.  That all Defendants be prohibited and enjoined from any further participation in the J-1 Visa Program in perpetuity;

  b.  Judgment against all Defendants, jointly and severally;

  c.  That Plaintiffs be awarded compensatory and consequential damages;

25

d.  That Plaintiffs be awarded punitive damages as allowed by law;

e.  That Plaintiffs be made whole by providing them with compensation, moneys paid during the recruitment process and expenses incurred to travel to and from the United States, repayment of deductions withheld from Plaintiffs' paychecks, and other affirmative relief;

f.  That Plaintiffs be awarded reasonable attorneys fees and costs incurred in prosecuting this action; and

g.  That Plaintiffs be awarded such additional and further relief as is just and appropriate.

**COUNT VIII - FRAUDULENT MISREPRESENTATION – ALL DEFENDANTS**

200.    Defendants' represented WITCC's Federal J-1 Visa Program as a cultural exchange study program in which they would study and work at a job related to their field of study for a period of two years.

201.    The Defendants' representation of WITCC's Federal J-1 Visa Program was false as the Plaintiffs' jobs held no educational value and were unrelated to their field of study.

202.    The Defendants' representations were material as the Plaintiffs made the decision to participate in the J-1 Visa Program based on the representations that they would be receiving an education and professional skills in their field of study.

203.    Defendants knew the representations about WITCC's J-1 Visa Program were false.

204.    Defendants intended to deceive Plaintiffs.

205.    The Plaintiffs acted in reliance on the truth of the representations and were justified in relying on the representations.

26

206.     The Defendants' representations of WITCC's J-1 Visa Program were a cause of the Plaintiffs' damage.

207.     As a result of Defendants' actions, Plaintiffs have sustained injuries and damages, including but not limited to economic injury, past and future pain and suffering, and other damages in amounts to be determined by the finder of fact.

208.     Defendants' actions against Plaintiffs were willful and wanton and done with malice or in reckless disregard of the rights of Plaintiffs, entitling them to punitive damages.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount that will fully and fairly compensate them for their injuries and damages, punitive damages in an amount sufficient to punish Defendants and to deter them and others from engaging in the same or similar wrongful conduct in the future, court costs, prejudgment and postjudgment interest, and for such other appropriate relief as the Court finds just and appropriate.

## COUNT IX: NEGLIGENT MISREPRESENTATION – ALL DEFENDANTS

209.     Defendants made untrue assertions, believing them to be true, by consistently and falsely representing to Plaintiffs that the J-1 Visa Program at WITCC was a cultural exchange program in which Plaintiffs would study and gain hands-on experience related to their field of study.

210.     Defendants committed a breach of duty which, without intent to deceive, allowed the Defendants to gain an advantage by misleading Plaintiffs to Plaintiffs' disadvantage.

211.     The representations made by Defendants were material to the ability of any prospective J-1 Visa Program participant to decide whether to accept placement in the program.

212.     The representations made by Defendants were false.

213. Defendants had a financial interest in supplying the information to Plaintiffs which portrayed the work opportunities as "internships".

214. Defendants knew or should have known that the representations made to Plaintiffs were false.

215. The Plaintiffs justifiably acted in reliance on the representations that they would receive education and professional work experience in their field of study by participating in the J-1 Visa Program.

216. In making such representations, Defendants were negligent in one or more of the following particulars:

      a.  In representing that the professional experience Plaintiffs would be receiving would be related to their field of study.

      b.  In failing to disclose the secret deductions which were withheld from Plaintiffs' wages.

      c.  In representing that Plaintiffs would not be responsible for paying tuition, fees, or housing costs to Defendant WITCC.

      d.  In representing to Plaintiffs that they would be working no more than 32 hours per week.

217. The false representations of Defendants induced Plaintiffs into accepting placement in the J-1 Visa Program.

218. Plaintiffs subsequently discovered that they were not being placed in internships related to their field of study, that they were required to work more than 32 hours per week, and that secret deductions were being made from their wages.

219. As a proximate result of Defendants' actions, Plaintiffs have sustained injuries

and damages, including but not limited to economic injury, past and future pain and suffering, and other damages in amounts to be determined by the finder of fact.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount that will fully and fairly compensate them for their injuries and damages, court costs, prejudment and postjudgment interest, and for such other relief as the Court finds just and appropriate.

## COUNT X: UNJUST ENRICHMENT – ALL DEFENDANTS

220.    Defendants benefitted from Plaintiffs working because they did not fully compensate Plaintiffs for the hours they were working.

221.    Defendants withheld secret deductions from Plaintiffs' wages.

222.    It is unjust to allow Defendants to retain benefits under the circumstances.

223.    As a result of Defendants' actions, Plaintiffs have suffered economic injury, pain and suffering, and other damages.

224.    Defendants' actions against Plaintiffs were willful and wanton and done with malice or in reckless disregard of the rights and safety of Plaintiffs, entitling them to punitive damages.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount that will fully and fairly compensate them for their injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from similar wrongful conduct in the future, court costs, prejudment and postjudgment interest, and for such other relief as the Court finds just and appropriate.

## COUNT XI: BREACH OF WRITTEN CONTRACT – DEFENDANT WITCC

225.    On June 3, 2019, Defendant WITCC entered into a written contract with

29

Plaintiffs. Copies of the contracts are attached, marked Exhibits A-H, and incorporated by reference.

226.    By the terms of the contracts, Defendant WITCC agreed to provide Plaintiffs with an educational and cultural exchange experience through the J-1 Visa Program.

227.    Under the terms of the contracts, the Defendant WITCC and Plaintiffs agreed to the following:

      a.  Plaintiffs would participate in the J-1 Visa Program for the duration of one year, divided in to three semesters.

      b.  Plaintiffs would not be responsible for paying tuition, fees, housing, or supplies.

      c.  Defendant WITCC would provide meals to Plaintiffs.

      d.  Defendant WITCC would supply Plaintiffs with all necessary materials for classes and training.

      e.  Plaintiffs could not obtain paid internships off campus without permission from Defendant WITCC.

      f.  Plaintiffs would be receiving hands-on professional training, related to their field of study, in an external environment.

228.    Defendant failed to tender performance as required by the contract in that:

      a.  Plaintiffs were not provided with internships related to their field of study.

      b.  Plaintiffs were not provided with meals by Defendant WITCC.

      c.  Defendant WITCC made secret deductions from Plaintiffs' wages that they claim were used to pay for Plaintiffs' tuition, fees, and housing at WITCC.

229.    Defendant's failure to perform obligations under the contracts has damaged

Plaintiffs in that:

    a.   Plaintiffs were not given the education and professional skills they were promised.

    b.   Plaintiffs were not fully compensated for the unskilled work they were performing at their employers.

    c.   Plaintiffs' mental and physical health suffered due to the excessive hours they were expected to work.

230.    As a result of Defendant's actions, Plaintiffs have sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendant WITCC in an amount that will fully and fairly compensate them for their injuries and damages, court costs, prejudment and postjudgment interest, and for such other relief as the Court finds just and appropriate.

## COUNT XII: TORTIOUS BAD FAITH BREACH OF CONTRACT OR DENIAL OF CONTRACT – DEFENDANT WITCC

231.    The Plaintiffs' motivation for entering into the contracts with the Defendant WITCC was to gain educational and professional experience in their chosen field of study.

232.    Ordinary contract damages are not adequate for the breach of the contracts at issue because they do not account for the Defendant's superior position and they do not make the inferior position of Plaintiffs whole.

233.    In terms of the contracts to provide an educational and professional experience through a cultural exchange J-1 Visa, Plaintiffs were especially vulnerable to harm of breach due to being young, far away from their native countries, and navigating a new country, and therefore were required to trust Defendant WITCC to perform.

234.    Defendant WITCC was aware of Plaintiffs' vulnerabilities.

235.    Defendant WITCC breached its written contracts to provide Plaintiffs with

31

"hands-on training to prepare them for an entry level position" in their field of study.

236. Defendant WITCC breached its written contracts to provide the J-1 Visa Pogram free of cost to Plaintiffs and to provide meals.

237. Defendant WITCC's breach of contract was in bad faith in that Defendant had no reasonable basis to deny the existence of the contracts with Plaintiffs.

238. Defendant's breach of its written contracts with Plaintiffs was the proximate causes of Plaintiffs' damages as set forth herein.

239. Defendant WITCC knew it lacked a reasonable basis for denying the existence of such contracts or acted in reckless disregard for the lack of reasonable basis.

240. The failure and refusal of Defendant WITCC to perform its obligations under the contracts has damaged Plaintiffs financially and caused them substantial economic and emotional harm.

241. Defendant WITCC's actions perpetrated against Plaintiffs were willful and wanton and done with malice or in reckless disregard of the rights and safety of Plaintiffs, entitling them to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendant WITCC in an amount that will fully and fairly compensate Plaintiffs for their damages, for punitive damages in an amount sufficient to punish Defendant and to deter it and others from engaging in similar wrongful conduct in the future; court costs, prejudgment and postjudment interest, and such other relief as the Court deems just and appropriate.

### COUNT XIII: TORTIOUS INFLICTION OF EMOTIONAL DISTRESS – ALL DEFENDANTS

242. Defendants' unlawful acts and omissions went beyond the bounds of decency and beyond what can be tolerated by a civilized society.

243.    Defendants' unlawful acts and omissions were extreme and outrageous.

244.    Defendants knew their conduct would cause severe physical, psychological, and/or emotional harm, and they acted with intentional and/or reckless disregard for causing that harm.

245.    As a result of Defendants' conduct, Plaintiffs sustained injuries and damages including but not limited to past and future severe mental and emotional harm and anguish, pain and suffering, psychological and emotional injuries, humiliation, embarrassment, loss of enjoyment of life, and other damages as will be shown by the evidence.

246.    Defendants' actions perpetrated against Plaintiffs were willful and wanton and done with malice or in reckless disregard of the rights and safety of Plaintiffs, entitling them to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount that will fully and fairly compensate Plaintiffs for their damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from engaging in similar wrongful conduct in the future; court costs, prejudgment and postjudgment interest, and such other relief as the Court deems just and appropriate.

## JURY DEMAND

COME NOW Plaintiffs and demand trial by jury as to all counts.

/s/ Roxanne Conlin
ROXANNE CONLIN, AT0001642
DEVIN C. KELLY, AT0011691
ROXANNE CONLIN & ASSOCIATES, P.C.
3721 SW 61st Street, Suite C
Des Moines, IA 50321-2418
Phone: (515) 283-1111; Fax: (515) 282-0477
Email: roxanne@roxanneconlinlaw.com,
       dkelly@roxanneconlinlaw.com,
   cc: dpalmer@roxanneconlinlaw.com

*/s/ Paige Fiedler*
PAIGE FIEDLER AT0002496
paige@employmentlawiowa.com
AMY BECK AT0013022
amy@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923


ATTORNEYS FOR PLAINTIFFS