IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| JACQUELINE DE BRITTO BUCCO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN IOWA TECH COMMUNITY COLLEGE, et al., <br><br> Defendants. <br><br> CENTERS AGAINST ABUSE & SEXUAL ASSAULT, <br><br> Interested Party. | Case No. 5:21-cv-04001-LTS-KEM <br><br><br> **APPEAL OF MAGISTRATE JUDGE'S ORDER DATED 2/10/2023 ORDERING CAASA TO PRODUCE INFORMATION AND DOCUMENTS** |

Pursuant to Fed. R. Civ. P. 72 and LR 72A, Centers Against Abuse & Sexual Assault ("CAASA"), a non-party to this action, appeals the Order issued by the Magistrate on February 10, 2023 (ECF 164) (the "Order"), affirming in part and denying in part CAASA's Motion to Quash. In support CAASA states:

1. The Order should be reversed because it erroneously interprets and applies Iowa's Victim Counselor Privilege, Iowa Code § 915.20A. Namely, the Order erroneously interpreted the statutory definition of a "victim" insofar as it misinterpreted what qualifies as a "violent crime" under that definition. Iowa Code § 915.20A(1)(c).

2. The Magistrate first determined that the § 915.20A definition of "victim" governed this dispute (as opposed to the general definition of "victim" set forth in the Victims Rights Act, § 915.10(3)). CAASA does not challenge that part of the Order.

3. However, having determined that the § 915.20A(1)(c) definition of "victim" governed, the Order misinterpreted that term, leading it to conclude that victims of labor trafficking "were not subject to the privilege." Order at 3. As explained below, that interpretation of "victim" was contrary to law because it used a definition of what constitutes a "violent crime" that was contrary to the statutory definition.

### **The Victim Counselor Privilege Applies to Victims Alleging Labor Trafficking.**

4. Namely, the Victim Counselor Privilege defines a "victim" as:

> "Victim" means a person who consults a victim counselor for the purpose of securing advice, counseling, or assistance concerning a mental, physical, or emotional condition caused by a *violent crime* committed against the person.

§ 915.20A(1)(c) (emphasis added).

5. The Court interpreted the term "violent crime" as categorically not including "allegations of labor trafficking." Order at 2. The Order states in pertinent part:

> Western Iowa Tech resists, arguing that the statute protects only victims of violent crime. Indeed, the statute defines victim as "a person who consults a victim counselor for the purpose of securing advice, counseling, or assistance concerning a mental, physical, or emotional condition caused by a *violent crime* committed against the person." CAASA argues that the broader definition of victim contained in Iowa Code § 915.10 applies, but those definitions apply to the "subchapter, unless the context otherwise requires"; the definition relied upon by Western Iowa Tech applies "[a]s used in th[e] section" on the victim counselor privilege. Thus, documents and communications related to the Plaintiffs in this case and allegations of labor trafficking are not subject to the privilege.

(Order at 2) (footnotes omitted) (emphasis in Order, not in statute).

6. The Court's implicit interpretation of what constitutes a "violent crime" is plainly wrong because it is inconsistent with the definition of "violent crime" set forth in the Victims Rights statute.

7. The Victims Rights statute, in which the Victim Counselor Privilege is situated, broadly defines a "violent crime" as *"a forcible felony, as defined in section 702.11, and includes any other felony or aggravated misdemeanor which involved the actual or threatened infliction of physical or emotional injury on one or more persons*." § 702.11 (emphasis added). That broad definition of "violent crime" that governs. *See* § 915.10 (holding that definitions apply "unless the context otherwise requires").

8. The Order does not reference this definition, and its interpretation of the term "violent crime" is contrary to the statutory definition. The Order appears to implicitly interpret the term "violent crime" to include only forcible felonies in so far as the Order concluded that labor trafficking was categorically outside of the privilege's reach. But, in addition to forcible felonies, the statutory definition of "violent crime" "includes any other felony or aggravated misdemeanor which involved the actual or threatened infliction of physical or emotional injury on one or more persons." Iowa Code § 702.11 (emphasis added).[1]

9. The legislative history of the definition of "victim" in the Victim Counselor Privilege, further reinforces its intentionally broad scope. In 1989, the legislature expanded the scope of that privilege to make it cover victims of crime beyond domestic violence and sexual assault. 89 Acts, ch 194 sec.2. The definition of "victim" was changed as follows: "'Victim' means a person who consults a victim counselor for the purpose of securing advice, counseling, or assistance concerning a mental, physical, or emotional condition caused by a ~~sexual assault or~~

---

[1] This broad definition, and the broad scope of the privilege in general, reflects a legislative intent to protect information possessed by crime victim centers. A narrow interpretation of "victim," like the Magistrate's, would jeopardize the privilege because it would necessarily place crime victim centers in the position of having to reveal why certain information is privileged.

~~domestic violence~~ <u>violent crime committed against the person</u>."[2] The Bill's Explanation that the purpose of the changes was to expand the privilege's protection "to include *criminal acts* other than sexual abuse and domestic violence." (emphasis added)[3]. Thus, there is no reason to think the legislature intended the reference to "violent crimes" to be narrowly read; to the contrary, it appears the legislature intended that term to be broadly interpreted such that it understood the privilege would then "include criminal acts" beyond sexual abuse and domestic violence.

10. Using this correct interpretation of law, labor trafficking qualifies as a "violent crime." *At a minimum*, labor trafficking "involve[s] the…actual or threatened infliction of…emotional injury on one or more persons." The emotional and mental health impact on victims of labor trafficking are well-documented. For example, the U.S. Department of Health & Human Services' Office on Trafficking in Persons describes the emotional injuries suffered by labor trafficking victims as follows:

> **Health Impacts of Labor Trafficking**
>
> In addition to the human rights abuses that define their involuntary servitude, victims of labor trafficking suffer from a variety of physical and mental health problems:
>
> - Various methods of forced labor expose victims of labor trafficking to physical abuse such as scars, headaches, hearing loss, cardiovascular/respiratory problems, and limb amputation. Victims of labor trafficking may also develop chronic back, visual and respiratory problems from working in agriculture, construction or manufacturing under dangerous conditions.
>
> - The psychological effects of torture are helplessness, shame and humiliation, shock, denial and disbelief, disorientation and confusion, and anxiety disorders including posttraumatic stress disorder (PTSD), phobias, panic attacks, and depression.

---

[2] https://www.legis.iowa.gov/docs/publications/_iactc/73.1/CH0194.pdf

[3] https://www.legis.iowa.gov/legislation/BillBook?ga=73&ba=HF%20674

- Many victims also develop Traumatic Bonding or "Stockholm Syndrome," which is characterized by cognitive distortions where reciprocal positive feelings develop between captors and their hostages. This bond is a type of human survival instinct and helps the victim cope with the captivity.

- Child victims of labor trafficking are often malnourished to the extent that they may never reach their full height, they may have poorly formed or rotting teeth, and later they may experience reproductive problems.

https://www.acf.hhs.gov/archive/otip/fact-sheet/fact-sheet-labor-trafficking-english. *See also, e.g.,* Hopper EK, Gonzalez LD. A Comparison of Psychological Symptoms in Survivors of Sex and Labor Trafficking. Behav Med. 2018 Jul-Sep;44(3):177-188 (stating, regarding the results of a study of both *labor* and sex trafficking victims, "Human trafficking is a form of interpersonal trauma that has significant mental health impacts on survivors.").[4]

11. And while this appeal, like the Magistrate's Order, deals with the legal standard of what qualifies as a "violent crime" under the statute rather than a particularized inquiry as to the allegations in this case, Defendant's own filing in resistance to the Motion to Quash illustrates the actual nexus between labor trafficking and emotional injury. *See* Resistance, Exh. A (ECF at 162-1). Because CAASA is filing a motion, concurrent with this Appeal, asking that Exhibit A

---

[4] "Human trafficking is a form of interpersonal trauma that has significant mental health impacts on survivors. This study examined psychological symptoms in 131 survivors of sex and labor trafficking, including people trafficked into or within the United States. High rates of depression (71%) and posttraumatic stress disorder (PTSD) (61%) were identified. Two thirds of survivors also met criteria for multiple categories of Complex PTSD (C-PTSD), including affect dysregulation and impulsivity; alterations in attention and consciousness; changes in interpersonal relationships; revictimization; somatic dysregulation; and alterations in self-perception. Although there were not significant differences in the prevalence rates of diagnoses of PTSD or depression between survivors of sex and labor trafficking, important group differences were identified. Compared to survivors of labor trafficking, sex trafficking survivors had higher prevalence rates of pre-trafficking childhood abuse and a higher incidence of physical and sexual violence during trafficking. They reported more severe post-trauma reactions than labor trafficking survivors, including more PTSD and C-PTSD symptoms. They were also more likely to meet criteria for comorbid PTSD and depression, while labor trafficking survivors were more likely than sex trafficking survivors to meet criteria for depression alone."

be sealed and designated as Confidential in the underlying litigation, CAASA will not disclose specific contents of that filing herein. However, CAASA directs the Court to various pages of that filing that, by way of example, describe emotional injuries arising from labor trafficking. *See* ECF 162-1 at pages 10 (RBC 0167), 22 (RBC 0271), 31 (RBC 0399), 57 (RBC0546), 69 (RBC 0572), 79 (RBC0706), 103-04 (RBC1012-13), 105 (RBC 1035).

12. Accordingly, the Order's conclusion that "documents and communications relate to the Plaintiff in this case and allegations of labor trafficking are not subject to the [victim counselor] privilege" is contrary to law. *See Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 592 F. Supp. 2d 1087, 1092 (N.D. Iowa 2008) ("A magistrate judge's order on a non-dispositive matter may be set aside, *inter alia,* because it is 'contrary to law.'") (citing Fed. R. Civ. P. 72(a)). A magistrate's order is "contrary to law" when it "fail[s] to apply the correct legal standards." *Id.* Because the Order is contrary to law, this Court must set it aside. *See* Fed. R. Civ. P. 72(a) (the district court must set aside a magistrate judge's order that is "contrary to law" or "clearly erroneous").

13. For similar reasons, the Order is also "clearly erroneous" because "the entire record definitely and firmly illustrates that the [magistrate judge] made a mistake." *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 592 F. Supp. 2d 1087, 1094 (N.D. Iowa 2008). Here, in applying the wrong legal standard, the Order is clearly mistaken in holding that the privilege did not apply to labor trafficking allegations, including any communications the Plaintiffs in this case may have had with CAASA.

**Because the Privilege Applies, the Subpoena Must Be Quashed because the Defendant Was Required to, But Did Not Satisfy, the Substantive and Procedural Statutory Safeguards for Production.**

14. Because the Order concluded that the allegations in this case "are not subject to the privilege" it did not address the statute's substantive and procedural safeguards that govern the production of privileged documents held by CAASA. However, because these documents are privileged, Section 7 of the Victim Counselor Privilege imposes a rigorous undertaking that *must* occur before the Court orders the production of *any* privileged documents.

15. Namely, Section 7 of the Victim Counsel Privilege requires as follows:

> 7. Upon the motion of a party, accompanied by a written offer of proof, a court may compel disclosure of certain information if the court determines that all of the following conditions are met:
>
> a. The information sought is relevant and material evidence of the facts and circumstances involved in an alleged criminal act which is the subject of a criminal proceeding.
>
> b. The probative value of the information outweighs the harmful effect, if any, of disclosure on the victim, the counseling relationship, and the treatment services.
>
> c. The information cannot be obtained by reasonable means from any other source.

16. The Defendant has not complied, or even attempted to comply, with that section. It did not bring such a motion (or the requisite written offer of proof), nor did it make *any* showing of the probative value of the information. It has not demonstrated that the probative value outweighs the harmful effect of disclosure. CAASA, on the other hand, explained in its Motion to Quash briefing the chilling effect having to produce victim client information would have not only CAASA, but on victims and crime victim centers throughout Iowa.

17. In addition, Section 8 outlines the procedural requirements a Court must undertake before ordering disclosure, which were not undertaken in this case given the Magistrate's erroneous conclusion that the statutory privilege did not govern.

18. Specifically, Section 8 of the Victim Counselor Privilege requires:

> 8. In ruling on a motion under subsection 7, the court, or a different judge, if the motion was filed in a criminal proceeding to be tried to the court, shall adhere to the following procedure:
>
>     a. The court may require the counselor from whom disclosure is sought or the victim claiming the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the victim and any other persons the victim is willing to have present.
>
>     b. If the court determines that the information is privileged and not subject to compelled disclosure, the information shall not be disclosed by any person without the consent of the victim.
>
>     c. If the court determines that certain information may be subject to disclosure, as provided in subsection 7, the court shall so inform the party seeking the information and shall order a subsequent hearing out of the presence of the jury, if any, at which the parties shall be allowed to examine the counselor regarding the information which the court has determined may be subject to disclosure. The court may accept other evidence at that time.
>
>     d. At the conclusion of a hearing under paragraph "c", the court shall determine which information, if any, shall be disclosed and may enter an order describing the evidence which may be introduced by the moving party and prescribing the line of questioning which may be permitted. The moving party may then offer evidence pursuant to the court order. However, no victim counselor is subject to exclusion under rule of evidence 5.615.

19. Given that the documents sought are privileged and the Defendant has in no way satisfied its statutory burden to have them produced, the Motion to Quash should be granted in its entirety.

### Because the Privilege Applies and Because CAASA Has, Contrary to Legislative Intent, Been Burdened, Attorney's Fees Should Be Awarded.

20. Given that any documents held by CAASA[5] in this matter are subject to the victim counselor privilege when the term "victim" is properly interpreted, attorney fees—as requested in the Motion to Quash--should have been awarded to CAASA. *See* Fed. R. Civ. P. 45. Likewise, attorneys fees should be awarded for this appeal. *Id.*

21. The Defendant issued this subpoena without regard for the statutory privilege. That broad subpoena on a non-party sought information from a "crime victim center" that it had every reason to believe would be--at least in part--privileged. It should surprise no one that at least *some* documents possessed by a "crime victim center" would be statutorily privileged. Yet the Defendant took no steps to follow any statutory protections.

22. Indeed, the Magistrate's Order underscores that the Defendant's subpoena did, under any interpretation of the statute, seek privileged documents. Even under its improperly narrow interpretation of the scope of the privilege, the Order nonetheless acknowledged that some of the documents WITCC had subpoenaed from CAASA were subject to the privilege. *See* Order at 3 ("CAASA must only produce documents and information related to WITCC students in the J-1 Visa Program whose complaints were unrelated to sexual assault or other violent crimes.")

---

[5] As a recipient of federal funding, CAASA is prohibited from publicly disclosing the names of the individuals it assists. *See* 28 C.F.R § 94.115. CAASA therefore does not state whether it has assisted the Plaintiffs in this case. While CAASA notes that the Defendant obtained affidavits of CAASA, affidavits were submitted in confidence, with permission, and solely for purposes of Plaintiffs' immigration proceedings. That the Defendant somehow gained access to confidential and privileged documents without the consent of CAASA and/or its clients does not constitute a waiver. *See* § 915.20A(2) ("A victim counselor shall not be examined or required to give evidence in any civil or criminal proceeding as to any confidential communication made by a victim to the counselor, unless the victim waives this privilege in writing….").

23. The broad subpoena also placed CAASA in the untenable position of having to reveal a privilege to protect a privilege. Crime victims do not come to a crime victim center in tidy boxes; victims of labor trafficking may also, as part of or in addition to labor trafficking, be victims of other crimes, including sexual coercion and physical threats. Trauma from past crimes may be retriggered by the present crime and thus part of the present communications. Given this, a subpoena that sought all documents related to these Plaintiffs was a subpoena for a crime victim center to produce any and all information regarding these Plaintiffs, whether related to labor trafficking other related and unrelated crimes.

24. There is no reason to think in enacting a privilege specific to "crime victim centers"[6] like CAASA that the legislature intended for the center to burdened with defending itself and the victims it has served from an overly broad subpoena. But that is precisely what CAASA has been forced to do because the Defendant failed to recognize, let alone follow, any of the statutory safeguards and instead served a subpoena so broad that under any interpretation of the privilege sought statutorily privileged information from a non-party.

25. In doing so, the Defendant has a non-profit organization--a non-party to this action with limited resources and no in-house counsel--to incur significant attorney's fees and expenses simply to uphold its statutory privilege.

26. This subpoena (and by extension, the Magistrate's Order) already have had a chilling effect on crime victim centers across Iowa. If litigants are able to serve a subpoena on such centers—without regard to the statutory privilege and protections--and thereby force the centers to "prove" their privilege, the impact will be to burden such centers, to force centers to reveal

---

[6] *See* 915.20A(1)(b) (defining "Crime victim center" for purposes of the privilege).

privileges to protect privileges, and to undermine the trust that victims have in such centers. All of those consequences are contrary to the purpose of the Victim Counselor Privilege.

27. An award of reasonable fees and costs to CAASA thus is an appropriate sanction to protect CAASA from the burden and extreme expenses of defending its statutory privilege against this overly broad subpoena.

28. The Magistrate's Order declined to order attorney's fees because it held that "[a]s the privilege is largely inapplicable under the circumstances of this case, I decline to award attorney's fees." (Order at 3). Given that the privilege is not only applicable, but that privileged information was undeniably sought without following statutory safeguards, attorney fees should have been awarded.

## Conclusion

The Magistrate's Order of February 10, 2023, which granted in part and denied in part CAASA's Motion to Quash is contrary to law and clearly erroneous under Fed. R. Civ. P. 72(a) and should be set aside. The Motion to Quash should be granted because: (1) the information sought is subject to the privilege set forth in the Victim Counselor Privilege; and (2) the Defendant failed to satisfy the substantive and procedural safeguards that would allow a court to order the disclosure of any privileged documents held by CAASA.

In addition, because under a proper reading of the Victim Counselor Privilege the privilege unequivocally applies to the subpoenaed information and because the Defendant issued this broad subpoena without regard for the statutory privilege, attorney's fees and expenses should be awarded CAASA for having to defend itself by filing the Motion to Quash and this appeal. .

THE WEINHARDT LAW FIRM

By: /s/ Danielle M. Shelton
    Danielle M. Shelton    AT0007184
    2600 Grand Avenue, Suite 450
    Des Moines, IA  50312
    Telephone:  (515) 244-3100
    E-mail:  dshelton@weinhardtlaw.com

ATTORNEYS FOR INTERESTED PARTY

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on February 24, 2023 by CM/ECF.

Signature: /s/ Maura McNally-Cavanagh